UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                                :
THE CITY OF NEW YORK,                   :
                                                :
                   Plaintiff,      :
                                                  :
         -v-                           :        13 Civ. 1889 (DLC)
                                                  :
WOLFPACK TOBACCO; CLOUD AND COMPANY;     :        <u>OPINION AND ORDER</u>
ALLEGANY SALES AND MARKETING; PHILIP     :
JIMERSON; HEIDI JIMERSON, JOHN DOES      :
1-5, being persons who own, are         :
employed by or are associated with       :
Wolfpack Tobacco, PM DELIVERY, MICHAEL :
W. JONES, and JOHN DOES 6-10, being      :
persons who own, are employed by or      :
are associated with PM Delivery,        :
                                                  :
                   Defendants.     :
                                                  :
-------------------------------------- X

APPEARANCES:

For plaintiff:
Aaron Bloom
Eric Proshansky
Corporation Counsel of the City of New York
100 Church Street, Room 20-84
New York, NY 10007

For defendants Wolfpack Tobacco, Cloud and Company, Allegany
Sales and Marketing, Philip Jimerson, and Heidi Jimerson:
Paul J. Cambria, Jr.
Lipsitz Green Scime Cambria LLP
42 Delaware Ave., Suite 300
Buffalo, NY 14202

DENISE COTE, District Judge:

      This action concerns the alleged sale and distribution of

cigarettes from an establishment on the Allegany Reservation of

the Seneca Nation of Indians to customers in New York City and

elsewhere in violation of various State and Federal laws.
Plaintiff the City of New York ("the City") brings suit against
defendants Wolfpack Tobacco, Cloud and Company, Allegany Sales
and Marketing, Philip Jimerson, Heidi Jimerson, and John Does 1-
5 (collectively, the "Wolfpack Defendants" or "Wolfpack") for
violations of the Prevent All Cigarette Trafficking Act ("PACT
Act"), 15 U.S.C. § 375 et seq.; the Cigarette Marketing
Standards Act ("CMSA"), N.Y. Tax L. § 483 et seq.; and the
Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18
U.S.C. § 1961 et seq.  As to PM Delivery, Michael W. Jones, and
John Does 6-10 (collectively, the "PM Delivery Defendants"), the
City alleges violations of the Contraband Cigarette Trafficking
Act ("CCTA"), 18 U.S.C. § 2341 et seq. and RICO.  Before the
Court is the City's March 25, 2013, motion for a preliminary
injunction against the Wolfpack Defendants.  For the reasons
stated below, the motion is granted.


BACKGROUND

New York State and City law both impose excise taxes on
cigarettes sold to their residents, and require that these taxes
be paid by means of a "stamp."  See Oneida Nation of New York v.
Cuomo, 645 F.3d 154, 158 (2d Cir. 2011).  State-licensed
stamping agents pay the tax in advance by purchasing stamps from

2

the State's Department of Taxation and Finance and are then
required to affix the stamps to each pack of cigarettes before
selling them to wholesalers or retailers.  Id.  The taxes are
thus incorporated into the price of a pack of cigarettes and
passed to the consumer.  Id.; N.Y. Tax L. §§ 471, 473.  The City
alleges that the Wolfpack Defendants sell "unstamped" (i.e.,
tax-free and therefore significantly cheaper) cigarettes by mail
order to consumers in New York City.

     The City alleges that defendants Philip and Heidi Jimerson
sell and distribute unstamped cigarettes through companies they
own and operate: Wolfpack Tobacco, Cloud and Company, and
Allegany Sales and Marketing.  These companies advertise through
mailings and, formerly, through a website, and take orders from
customers by mail and by telephone.  One mailing sent out by
Wolfpack advertised "Tax Free Native Brand Cigarettes by Mail"
and listed prices for various brands, the highest of which was
$33.49 per carton.  The prices offered thus could not have
included New York State and City taxes, which alone amount to
over fifty dollars per carton.  See N.Y. Tax L. § 471(1); Admin.
Code of City of New York §§ 11-1302(a)(1), (2).

     On January 10 and December 27, 2012, an investigator from
the Office of the New York City Sheriff placed orders for
several cartons of cigarettes from Wolfpack by filling out

3

Wolfpack's mail order form and attaching a money order.  In neither order did the investigator pay more than $34.45 for a carton, meaning that the cigarettes were not taxed.  When the cigarettes were delivered, the packages did not indicate that they contained cigarettes, the delivery driver did not ask for identification, and the packs of cigarettes in the boxes were not affixed with tax stamps.  Records obtained by the City show that since December 2, 2010, PM Delivery has shipped thousands of packages weighing more than 45,000 pounds in total from the Wolfpack Defendants to customers in the City.

The City filed its complaint on March 21, 2013.  The complaint alleges that the Wolfpack Defendants have violated the PACT Act by failing to report their cigarette sales to the City, failing to properly label their shipments, failing to verify the age of those receiving the cigarettes, and exceeding the maximum weight allowed for individual shipments under the Act.  The complaint alleges that the Wolfpack Defendants have violated the CMSA by selling unstamped (and therefore tax-free) cigarettes to City residents.  The complaint also advances a claim against the PM Delivery Defendants for violations of the CCTA.  Finally, the complaint advances a RICO claim against the Wolfpack and PM Delivery Defendants for violating the CCTA, although it does not

4

make a CCTA claim against the Wolfpack Defendants directly.[1]

On March 25, the City filed the instant motion, which sought a preliminary injunction against both the Wolfpack and PM Delivery defendants.  After receiving pro se letter-answers from Michael W. Jones and John L. Powers, however, the City on May 5 withdrew its motion for a preliminary injunction as against the PM Delivery defendants and on May 31 voluntarily dismissed Powers from the case entirely.  In its current form, the City's motion thus seeks a preliminary injunction against the Wolfpack Defendants for violations of the PACT Act and CMSA only.[2]  The Wolfpack Defendants filed their opposition to the City's motion on May 21, and the City filed its reply on June 4.


DISCUSSION

A party seeking a preliminary injunction is generally required to show (1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, (2) that the moving party is likely to suffer irreparable injury in the

---

[1] Under the CCTA, "[n]o civil action may be commenced . . . against an Indian tribe or an Indian in Indian country."  18 U.S.C. § 2346(b)(1).
[2] In its June 4 reply brief, the City also indicates that it no longer seeks a preliminary injunction against defendant Heidi Jimerson.

absence of a preliminary injunction, (3) a balance of the
hardships tipping in favor of the moving party, and (4) that the
public interest would not be disserved by the issuance of a
preliminary injunction.  WNET, Thirteen v. Aereo, Inc., 712 F.3d
676, 684 (2d Cir. 2013).  Where a party seeks a statutory
injunction, however, a presumption of irreparable harm often
applies, since the party is said to be acting as "a statutory
guardian charged with safeguarding the public interest."  SEC v.
Management Dynamics, Inc., 515 F.2d 801, 808 (2d Cir. 1975).  In
such cases, the party seeking the injunction must make a "clear
showing" of success on the merits and likelihood that the
violations will recur.  SEC v. Unifund SAL, 910 F.2d 1028, 1039
(2d Cir. 1990).

The Second Circuit has held that a presumption of
irreparable harm applies to injunctions under the CMSA and CCTA.
City of New York v. Golden Feather Smoke Shop, Inc., 597 F.3d
115, 121 (2d Cir. 2010).  This conclusion was based on the fact
that "[b]oth statutes make unlawful specific conduct related to
the sale and possession of certain unstamped cigarettes,
indicating Congress and the New York Legislature's determination
that such conduct, in and of itself, is harmful to the public."
Id.  Both statutes also explicitly allow local governments to
obtain injunctive relief for violations of their substantive

provisions.  Id.; see also 18 U.S.C. § 2346(b)(2); N.Y. Tax L.
§ 484(b)(1).  Because the PACT Act contains enforcement
provisions identical to those in the CCTA, see 15 U.S.C.
§ 378(c)(1)(A), and also "make[s] unlawful specific conduct
related to the sale and possession of [cigarettes]," Golden
Feather, 597 F.3d at 121, the City is entitled to a presumption
of irreparable harm when seeking an injunction under the PACT
Act as well.[3]

   The Wolfpack Defendants do not take issue with the
application of Golden Feather to the PACT Act.  Instead, they
argue that the Second Circuit's decision in Golden Feather is
"in direct contravention of Supreme Court precedent."  In
support of this contention, Wolfpack cites Winter v. Natural
Res. Def. Council, Inc., 555 U.S. 7, 22 (2008), and eBay Inc. v.
MercExchange, LLC, 547 U.S. 388, 392-93 (2006).  Both of those
cases, however, predate Golden Feather, and the Wolfpack
Defendants do not point to any case decided since Golden Feather
that calls its holding into question.  Nor do Winter and eBay

---

[3] Even if it were required to show irreparable harm, the City
would have no trouble doing so.  One study conducted by the
Commissioner of the New York City Department of Health
concluded, based on the idea that every 10% increase in the
price of cigarettes leads to a 4% decline in smoking, that
unstamped cigarettes sold from one Indian reservation led to
roughly 450 premature deaths in New York City each year.  City
of New York v. Golden Feather Smoke Shop, Inc., No. 08 Civ. 3966
(CBA), 2009 WL 2612345, at *23 (E.D.N.Y. Aug. 25, 2009).

undermine the holding of Golden Feather, as they deal with
private plaintiffs enforcing private rights, not statutory
injunctions like the one sought by the City.  See Golden
Feather, 597 F.3d at 120 ("The function of a court in deciding
whether to issue an injunction authorized by a statute of the
United States to enforce and implement Congressional policy is a
different one from that of the court when weighing claims of two
private litigants.") (quoting United States v. Diapulse Corp. of
Am., 457 F.2d 25, 27 (2d Cir. 1972)).  The City is thus entitled
to a preliminary injunction if it can show a clear and
substantial likelihood of success on the merits of its PACT Act
and CMSA claims against the Wolfpack Defendants and that such
violations are likely to recur.  Golden Feather, 597 F.3d at
121.

I.  PACT Act

The PACT Act regulates remote sales of cigarettes, and
imposes a variety of requirements on sellers of cigarettes with
the aim of ensuring that taxes are paid and cigarettes are not
sold to children.  See Pub. L. No. 111-154 § 1(b), 124 Stat.
1087 (2009).  Several of these requirements are relevant here.
First, the statute requires sellers of cigarettes who ship them
to states or localities that impose taxes on them to file with
those states and localities each month "a memorandum or a copy

8

of the invoice covering each and every shipment of cigarettes
. . . made during the previous calendar month." 15 U.S.C.
§ 376(a). Second, the PACT Act requires that every "shipping
package containing cigarettes" bear the following label:
"CIGARETTES/SMOKELESS TOBACCO: FEDERAL LAW REQUIRES THE PAYMENT
OF ALL APPLICABLE EXCISE TAXES, AND COMPLIANCE WITH APPLICABLE
LICENSING AND TAX-STAMPING OBLIGATIONS." 15 U.S.C.
§ 376a(b)(1). Third, the PACT Act forbids selling or delivering
more than ten pounds of cigarettes in a single sale or shipment.
Id. § 376a(b)(3). Finally, the statute requires sellers to "use
a method of mailing or shipping that requires" the purchaser to
sign for the delivery and provide government-issued
identification showing that the purchaser is of age. Id.
§ 376a(b)(4)(ii).

The City has alleged that the Wolfpack Defendants violate
all four of these provisions, and has clearly shown that it is
likely to succeed on the merits. As for the reporting
requirement, the PACT Act provides that the required reports be
filed with the local government's "tobacco tax administrators
and chief law enforcement officers." Id. § 376(a)(3). In the
case of New York City, the tobacco tax administrator is the
Commissioner of the City's Department of Finance, NYC Admin.
Code § 11-1308, and the chief law enforcement officer is the

Office of Corporation Counsel.  The City reports that neither of those entities has received a report from Wolfpack since June 29, 2010, and Wolfpack does not argue otherwise.

As to the PACT Act's labeling requirement, neither of the shipments received by the City's investigator bore the required labels, and again Wolfpack does not argue that its shipments were properly labeled.  As to the weight limits, shipping records obtained by the City show numerous deliveries of more than ten pounds to City addresses.  Finally, as to the age verification requirements, the City reports that both shipments made to its investigator were delivered without a request for identification.  Indeed, Wolfpack's promotional mailings included a page entitled "Wolfpack Tobacco Policies," which indicated that "if you are not at home your package will be left at your address."

The Wolfpack Defendants make several arguments in the face of this evidence.  First, as to the weight limit, Wolfpack points out that neither of the shipments sent to the City's investigator weighed more than ten pounds, and that the shipment records alone do not demonstrate conclusively that any particular shipment contained more than ten pounds of cigarettes, since they do not reveal the contents of the shipments.  Wolfpack does not, however, introduce any of its own

evidence as to what these shipments contained other than
cigarettes.  It is undisputed that the primary business of
Wolfpack Tobacco is, unsurprisingly, tobacco.  Indeed,
Wolfpack's mailings indicate that it offers free shipping for
orders of more than 30 cartons of cigarettes as well as
"quantity discounts," including $20 off on orders of 40-59
cartons (a carton of cigarettes weighs roughly two-thirds of a
pound).  It therefore strains credulity to think that in dozens
of shipments weighing more than ten pounds, no shipment
contained more than ten pounds of cigarettes.  In the absence of
any evidence from Wolfpack, the logical inference will be taken
from the evidence before the Court.

　　　Wolfpack next argues, as to the PACT Act's age verification
requirements, that it is "not responsible for the PM Delivery
defendants' purported failure to follow the PACT Act's
requirements."  Wolfpack also points out that its order forms
indicate that "WE MUST HAVE PHOTO ID TO VERIFY AGE."  First, the
PACT Act explicitly requires the seller to "use a method of
mailing or shipping that requires" age verification.  15 U.S.C.
§ 376a(b)(4).  The statute thus places a burden on Wolfpack, and
Wolfpack has not introduced any evidence that it sought to
ensure that PM Delivery would verify its customers' ages.
Indeed, the April 25, 2013 letter-answer from Michael W. Jones,

the sole proprietor of PM Delivery, indicates that (1) Wolfpack itself generated and applied the shipping labels, which failed to include the required notice that the boxes contained cigarettes; and (2) Wolfpack deliberately hid the fact that the shipments contained cigarettes by doing business with PM Delivery through "Cloud & Co." and representing that they sold "Native American Manufactured Products."  Indeed, Wolfpack's own "policies" instructed its customers not to contact the delivery company because "the delivery company does not know what they are delivering."  The City has thus demonstrated that Wolfpack failed to comply with the PACT Act's labeling and age verification requirements.

Wolfpack also argues that the City is unlikely to succeed on the merits because the PACT Act is unconstitutional.  In Red Earth LLC v. United States, 657 F.3d 138 (2d Cir. 2011), the Second Circuit upheld an injunction of the PACT Act's provisions requiring delivery sellers to pre-pay state taxes.  There was a close constitutional question, the court concluded, as to whether these provisions violated the Due Process Clause's requirement that an out-of-state merchant have sufficient contacts with a state before it can be subject to that state's taxes.  Id. at 143-45.  The crucial problem was that the PACT Act "automatically subjects delivery sellers to the laws of the

forum state notwithstanding the presence or absence of any other contacts with that forum." Id. at 144; see also Gordon v. Holder, 721 F.3d 638 (D.C. Cir. 2013) (also affirming preliminary injunction of PACT Act's tax provisions). Recognizing this, the City has not sued Wolfpack for violating any of the PACT Act's enjoined provisions.[4]  Moreover, the PACT Act provisions at issue here do not impose state taxes (or state laws generally) on cigarette shipments and therefore do not implicate the Due Process concerns discussed in Red Earth and Gordon.  There is thus no reason to think that the provisions of the PACT Act at issue in this case are unconstitutional.

    II.  The CMSA

    The CMSA "prohibits the sale of cigarettes below cost when the seller intends thereby to harm competition or evade taxes." Lorillard Tobacco Co. v. Roth, 786 N.E.2d 7, 8 (N.Y. 2003).  The "cost" below which cigarettes cannot be sold is the "basic cost of cigarettes" plus the dealer's cost of doing business.  N.Y. Tax L. § 483(b)(3)(A).  The "basic cost of cigarettes" is in turn defined as "the invoice cost of cigarettes to the agent . . . to which shall be added the full face value of any stamps which may be required by law."  N.Y. Tax L. § 483(a)(1).  It is

---

[4] The injunction against enforcement of the PACT Act applies only to three of the Act's provisions, 657 F.3d at 145, none of which is at issue here.

undisputed, and the City's evidence discussed above demonstrates, that Wolfpack sells cigarettes for below even the cost of the tax stamps required by State and City law.

The CMSA provides that "[e]vidence of advertisement, offering to sell or sale of cigarettes . . . at less than cost . . . shall be prima facie evidence of intent" to evade taxes. N.Y. Tax L. § 484(6).  Nevertheless, Wolfpack argues that the City has not presented any evidence of "actual intent." Wolfpack does not offer any of its own evidence to rebut the presumption that it acted with intent, and its suggestion that the City is required to "prove that Wolfpack knew that their Native Brands were subject to taxation" is contrary to the statutory scheme.[5]

The Wolfpack Defendants also argue that New York lacks the power to "regulate the affairs of Indians on a reservation." See Williams v. Lee, 358 U.S. 217, 220-21 (1959).  The law is clear, however, that while a state may not "tax cigarettes sold to tribal members for their own consumption," it may tax "sales to persons other than reservation Indians."  Dep't of Tax. And Fin. of N.Y. v. Milhelm Attea & Bros., Inc., 512 U.S. 61, 64

---

[5] At any rate, State law leaves no room for doubt as to whether such cigarettes are subject to tax.  See N.Y. Tax L. § 471(1) ("The tax imposed by this section is imposed on all cigarettes sold on an Indian reservation to non-members of the Indian nation or tribe . . . .").

(1994); see also Washington v. Conf. Tribes of Colville Reservation, 447 U.S. 134, 160-61 (1980).[6]  As with the PACT Act, the City has thus carried its burden of making a clear showing that it is likely to succeed on its claims under the CMSA.

III.  Likelihood of Recurrence

To be entitled to a preliminary injunction, the City must also show that the violations are likely to recur.  Unifund, 910 F.2d at 1039.  Where a court faces "a history of legal violations," it has "significant discretion to conclude that future violations of the same kind are likely."  Kapps v. Wing, 404 F.3d 105, 123 (2d Cir. 2005).  The thousands of shipments shown in the records submitted by the City amply demonstrate that Wolfpack has a history of violating the PACT Act and the CMSA, and there is therefore no reason to doubt that future violations are likely to occur.  Defendant Philip Jimerson, Wolfpack's sole proprietor, has submitted an affidavit indicating that he "now requires employees to weigh each parcel" and "inspect all bills of lading . . . prior to shipping."  Aside from a general affirmation that "Wolfpack Tobacco is currently engaging in best efforts to refrain from violating any

_____

[6] Wolfpack also argues that the CMSA conflicts with New York Indian Law § 6 ("Exemption of reservation lands from taxation"), but that law is clearly inapposite, as it applies only to taxes on real estate.  Snyder v. Wetzler, 603 N.Y.S.2d 910, 912-13 (App. Div. 1993).

applicable State or Federal Requirements," Jimerson does not indicate that Wolfpack has stopped shipping unstamped cigarettes in violation of the CMSA, and does not mention the PACT Act's age verification and reporting requirements.  Wolfpack also has not submitted any other evidence that it is currently complying with these laws.  The Court thus concludes that Wolfpack's violations are likely to continue in the absence of an injunction.

IV.  Balance of the Equities and the Public Interest

The balance of the equities and the public interest both favor the issuance of a preliminary injunction.  While arguing that the City has only presented direct evidence of two illegal sales, Wolfpack nevertheless suggests, in only the most general terms, that a preliminary injunction requiring it to comply with the PACT Act and CMSA would hurt its business.  Assuming that this is the case, the balance of equities nonetheless favors the proposed injunction.  Both Congress and the New York State legislature have found that remote sales of cigarettes are a serious public health threat, deprive governments of significant tax revenue, harm competition, and increase the likelihood that cigarettes will wind up in the hands of children.  See Pub. L. No. 111-154 § 1(b); N.Y. Public Health Law § 1399-ll, ch. 262, § 1 (McKinney 2000).  For these reasons, the public interest

also favors the entry of a preliminary injunction.

CONCLUSION

The City's March 25 motion for a preliminary injunction is granted.

SO ORDERED:

Dated:     New York, New York
           September 9, 2013

_____
                DENISE COTE
        United States District Judge

17